Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V-ESPECIAL

| LIZBETH ROLDÁN FLECHA<br><br>Apelante<br><br>v.<br><br>LUIS ALBERTO CRUZ CRUZ Y OTROS<br><br>Apelado | KLAN202500272 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.: HU2021CV00564<br><br>Sobre: Rescisión de Contrato por Dolo y Daños y Perjuicios |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 5 de mayo de 2025.

Comparece Lizbeth Roldán Flecha (señora Roldán Flecha o apelante) mediante un recurso de *apelación*, para solicitarnos la revisión de la *Sentencia* en reconsideración, emitida el 6 de marzo de 2025 y notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Humacao.[1] Mediante la *Sentencia* apelada, el foro primario declaró *Ha Lugar* una solicitud de reconsideración presentada por la parte apelada del título. En consecuencia, dejó sin efecto una *Resolución* emitida y notificada el 17 de julio de 2024,[2] y desestimó la acción presentada por la aquí apelante, con perjuicio.

Por los fundamentos que expondremos, se *revoca* la *Sentencia* apelada.

I

Iniciamos por mencionar que, por *segunda* ocasión, este Panel recibe un recurso apelativo sobre caso del título. A esos efectos, nos

---

[1] Apéndice 12 del recurso, a las págs. 212-219.
[2] Apéndice 9 del recurso, a las págs. 189-200.

Número Identificador

SEN2025_____

limitaremos a reseñar los hechos atinentes a la controversia que nos ocupa en esta ocasión.[3] Establecido lo anterior, procederemos a relatar los trámites procesales que propiciaron la presentación de este recurso apelativo.

El caso del título inició, el 7 de junio de 2021, cuando la señora Roldán Flecha instó una *Demanda* sobre recisión de contrato por dolo y daños y perjuicios contra Luis Alberto Cruz Cruz (señor Cruz Cruz) y Jazmín Martínez Rosario (señora Martínez Rosario) (en conjunto Matrimonio Cruz-Martínez o parte apelada); la Cooperativa de Ahorro y Crédito Oriental (Cooperativa), y Oriental Bank de Puerto Rico (Oriental Bank).[4] En el referido pliego, adujo haber adquirido una propiedad perteneciente al Matrimonio Cruz-Martínez, ubicada en el municipio de Las Piedras, Puerto Rico. Esbozó que, adquirida la misma, comenzó a pintar la casa y que, al raspar el techo, gran parte de este se desplomó y quedó la varilla expuesta. Acotó que, por razón de estos vicios ocultos, no ha podido vivir ni disfrutar la propiedad, y que, de haberlos conocido, no hubiese comprado la propiedad en cuestión. A tenor, solicitó al foro de instancia a que: (i) ordenara la recisión del contrato de compraventa; (ii) condenara a la parte demandada a pagar, solidariamente, la suma de $50,000.00 dólares por concepto de daños y perjuicios; (iii) condenara a la parte demandada a pagar la suma de $36,000.00 dólares, por concepto de gastos de reparación de los vicios ocultos, y (iv) condenara, solidariamente, a la parte demandada a satisfacer las costas, gastos y honorarios de abogado.

---

[3] En la *primera* ocasión, compareció ante este Panel la Cooperativa de Ahorro y Crédito Oriental mediante un recurso de *certiorari,* en el alfanumérico KLAN202400614, luego de que el foro de instancia denegara una solicitud de sentencia sumaria presentada por dicha parte. Mediante *Sentencia,* emitida el 16 de junio de 2024, expedimos el auto de *certiorari,* revocamos la *Resolución* dictada el 6 de mayo de 2021, y desestimamos con perjuicio la demanda instada contra la Cooperativa de Ahorro y Crédito Oriental. Véase el Sistema Unificado de Manejo y Administración de Casos (SUMAC), a las Entradas 102 y 125.

[4] Apéndice 1 del recurso, a las págs. 1-4.

En respuesta, y en lo atinente, el 29 de julio de 2021, el matrimonio Cruz-Martínez presentó su *Contestación a Demanda.*[5] En síntesis, negaron esencialmente todas las alegaciones y presentaron sus defensas afirmativas. Particularmente, en cuanto a los vicios ocultos, resaltaron que la apelante tuvo acceso total a la propiedad, varios días antes de la fecha de cierre, por lo que tuvo tiempo necesario para realizar todas las inspecciones a la casa que quisiera. Por otra parte, subrayaron que, mediante la escritura de compraventa, la señora Roldán Flecha aceptó la propiedad en las condiciones en que estaba.

Posteriormente, el 9 de febrero de 2022, la señora Roldán Flecha presentó una *Demanda enmendada.*[6] En síntesis, la enmienda consistió en incluir varias alegaciones contra la Cooperativa. En respuesta, el 26 de abril de 2022, la parte apelada presentó su *Contestación a demanda enmendada.*[7] En lo pertinente a las alegaciones contra la parte aquí apelante, reprodujo, básicamente, lo que fue su alegación responsiva original.

En lo atinente, el 19 de septiembre de 2023, Oriental Bank instó una solicitud de sentencia sumaria,[8] la cual, conforme se desprende de los autos, fue declarada *Ha Lugar* mediante *Sentencia Parcial*, emitida el 10 de noviembre de 2023, y notificada el día 13, del mismo mes y año.[9] En la antedicha *Sentencia Parcial*, el foro de instancia desestimó con perjuicio la causa de acción contra Oriental Bank, tras juzgar que no se expusieron reclamaciones que justificaran la concesión de un remedio.[10]

De ahí, el 1 de abril de 2024, la Cooperativa presentó una *Moción en solicitud de sentencia sumaria.*[11] En el escrito, adujo que,

---

[5] Apéndice 2 del recurso, a las págs. 5-9.
[6] Apéndice 4 del recurso, a las págs. 16-19.
[7] Apéndice 5 del recurso, a las págs. 20-24.
[8] Véase el SUMAC, a la Entrada 83.
[9] *Íd.*, a la Entrada 89.
[10] *Íd.*
[11] Véase SUMAC, a la Entrada 97.

conforme a las determinaciones de hecho esgrimidas en la antedicha *Sentencia Parcial,* no había controversia en cuanto a que la Cooperativa no participó de las negociaciones llevadas a cabo por el Matrimonio Cruz-Martínez y la señora Roldán Flecha para la compraventa de la propiedad en controversia, por lo que, según el derecho vigente, no era responsable por los vicios de construcción alegados. A esos efectos, la Cooperativa solicitó al foro primario que desestimara con perjuicio la causa de acción presentada en su contra, ya que no se justificaba que se concediera un remedio a la señora de Roldán Flecha. Evaluada la antedicha solicitud, así como el escrito en oposición presentado por la apelante,[12] mediante *Resolución* del 6 de mayo de 2024, notificada al día siguiente, el foro primario declaró *No Ha Lugar* la moción de sentencia sumaria presentada por la Cooperativa.[13] Posteriormente, el tribunal de instancia declaró sin lugar una moción de reconsideración instada por la Cooperativa.[14]

Tras varios incidentes innecesarios pormenorizar, el 23 de mayo de 2024, el Matrimonio Cruz-Martínez incoó una *Moción de Sentencia Sumaria.*[15] En el pliego, la parte apelada solicitó que se dictara una sentencia desestimatoria con perjuicio, tras razonar que la demanda instada dejaba de exponer reclamaciones que justificaran la concesión de un remedio. Esbozó que, en el presente caso, el notario que otorgó la escritura de compraventa advirtió a la apelante que debían mesurar el terreno adquirido y verificar si la estructura adolecía de vicios. Además, detalló que, como parte de las cláusulas y condiciones de la escritura, la señora Roldán Flecha acordó adquirir la propiedad en las condiciones en que estaba - "AS

---

[12] Véase SUMAC, a la Entrada 101.

[13] *Íd.*, a la Entrada 102.

[14] *Íd.*, a la Entrada 105.

[15] Apéndice 6 del recurso, a las págs. 25-160. Para apoyar su petitorio sumario incluyó los siguientes anejos: Anejo 1: Deposición de la señora Roldán Flecha, con fecha del 26 de febrero de 2024, y Anejo 2: Deposición del perito Carlos J. Mendoza Angulo, con fecha del 27 de febrero de 2024.

IS"-. Por otra parte, acotó que, a la parte apelante, se le entregaron las llaves de la propiedad en dos (2) ocasiones para que inspeccionara la misma antes de firmar la escritura. Apoyado en lo anterior, el Matrimonio Cruz-Martínez planteó que procedía la desestimación de la acción en su contra.

En reacción, el 13 de junio de 2024, la apelante presentó una *Moción en cumplimiento de orden y oposición a que se dicte sentencia sumaria*.[16] En el pliego, aceptó como no controvertidos algunos hechos y negó otros, por lo que solicitó al foro primario que denegara la solicitud de sentencia sumaria y ordenara la continuación de los procedimientos. Particularmente, negó los hechos relacionados a que, mediante la escritura de compraventa, renunció a cualquier reclamación de vicios ocultos. Arguyó que, en nuestro ordenamiento jurídico, así como en la esfera federal, se ha razonado que se debe tener cautela en cuanto a las cláusulas de relevo de responsabilidad redactadas en términos generales. Por otra parte, acentuó que, aunque inspeccionó la propiedad en dos (2) ocasiones, no era perito, por lo que fue incapaz de identificar los defectos en el techo. Igualmente, detalló que el perito contratado por ella visitó la casa luego del desprendimiento del techo, no antes, para ver las condiciones de la propiedad y el costo de reparación.

Luego, mediante *Sentencia* emitida por este Panel en el alfanumérico KLAN202400614, revocamos la *Resolución* emitida, el 6 de mayo de 2024, por el foro de instancia. Ello, luego de concluir que el referido foro incidió al denegar la solicitud de sentencia sumaria instada por la Cooperativa el 1 de abril de 2024.[17] A esos efectos, y siendo lo procedente en derecho, mediante *Sentencia* del

---

[16] Apéndice 7 del recurso, a las págs. 161-171. Como parte de su escrito en oposición a la sentencia sumaria la parte apelante no anejó ningún documento para apoyar sus argumentos.
[17] Véase el SUMAC, a la Entrada 97.

16 de julio de 2024, este Tribunal de Apelaciones desestimó, con perjuicio, la causa de acción instada contra Oriental Bank.[18]

En lo pertinente a la controversia ante nos, tras varias incidencias procesales, el 17 de julio de 2024, el foro de instancia emitió y notificó una *Resolución* mediante la cual declaró *No Ha Lugar* la solicitud de sentencia sumaria instada y ordenó la continuación de los procedimientos.[19] En la *Resolución*, el tribunal *a quo* estableció trece (13) hechos como incontrovertidos. Empero, expresó que existían cuatro (4) hechos en controversia, por lo que no procedía dictar sentencia sumaria.[20] Con todo, el foro primario dispuso evaluar y considerar los escritos, y concluyó que las controversias delineadas le impedían dictar un remedio sumario, puesto a que eran asuntos en los cuales se debía dirimir la credibilidad.

Inconforme, el 1 de agosto de 2024, el Matrimonio Cruz-Martínez presentó una *Moción de reconsideración.*[21] En el escrito, solicitó al foro inferior que, cónsono a los fundamentos esbozados, procedía que se reconsiderara la determinación tomada y, en su lugar, se concediera la solicitud de sentencia sumaria instada por la parte apelada. En específico, señaló que, en las determinaciones de hechos esgrimidas por el foro primario, en su *Sentencia* del 10 de

---

[18] Véase SUMAC, a la Entrada 125.

[19] Apéndice 9 del recurso, a las págs. 189-200.

[20] *Íd.*, a la pág. 194. Los hechos que el foro de instancia estimó controvertidos fueron los siguientes:

1. Existe controversia si la señora Flecha tenía conocimiento de los vicios redhibitorios o si estaban a simple vista.

2. Existe controversia de si el señor Cruz sab[í]a de los vicios redhibitorios de la propiedad.

3. Existe controversia de si el señor Cruz inform[ó] a la demandante de los vic[i]os redhibitorios para que así la demandante tuviera pleno conocimiento de las circunstancias al momento de adquirir la propiedad en controversia.

4. Existe controversia sobre el momento en que el perito visit[ó] la casa[,] entiéndase[,] si fue antes o después del desprendimiento del techo.

[21] Apéndice 10 del recurso, a las págs. 201-203.

noviembre de 2023, quedó establecido que, mediante la escritura de compraventa, la señora Roldán Flecha adquirió el inmueble objeto de este caso en las condiciones y en el estado en las que se encontraba, al momento de consumada compraventa. Por otra parte, señaló que, lo anterior, igualmente, fue considerado y determinado por el Tribunal de Apelaciones en su *Sentencia* del 16 de julio de 2024.

En reacción, el 13 de agosto de 2024, la apelante presentó su oposición.[22] Esbozó que el establecer que un contrato de compraventa se tramite "AS IS" no era otra cosa que una renuncia ilegal y nula. Acotó que la controversia en este caso era si la parte apelada le informó sobre cualquier vicio oculto y si ella tenía toda la información para poder tomar una decisión informada referente al contrato. Así, pues, la parte apelante solicitó al foro de instancia que denegara la solicitud de reconsideración y ordenara a la continuación de los procedimientos.

En respuesta, el 6 de marzo de 2025, notificada el 7 de marzo de 2025, el foro de instancia emitió una *Sentencia* mediante la cual, luego de expresar que la parte apelada presentó unos argumentos jurídicos novedosos los cuales le persuadieron, declaró *Ha Lugar* la solicitud de reconsideración. A esos efectos, dejó sin efecto la *Resolución* emitida y notificada el 17 de julio de 2024, y desestimó el caso, con perjuicio, por dejar de exponer reclamaciones que justificaran la concesión de un remedio.[23] Como parte de la *Sentencia* emitida, el foro *a quo* estableció quince (15) hechos incontrovertidos a saber:

1. El 27 de abril de 2021, la demandante-compradora la señora Lizbeth Roldán Flecha y los codemandados-vendedores el señor Luis. A. Cruz Cruz y la señora Jazmín Martínez Rosario suscribieron y otorgaron la Escritura Pública Núm. 68 de Compraventa ante el Notario Público Cristian Manuel Rivera Rodríguez.

---

[22] Apéndice 11 del recurso, a las págs. 204-211.
[23] Apéndice 12 del recurso, a las págs. 212-219.

2. Mediante la Escritura Pública Núm. 68 de Compraventa, el matrimonio Cruz Martínez vendió a la demandante el inmueble localizado en la calle 2-J-2 Las Piedras, de la Urb. April Garden, Las Piedras, Puerto Rico 00771, inscrito como la finca núm. 9,285 en la Sección de Humacao del Registro de la Propiedad.

3. Según consta de la Escritura Núm. 68 de Compraventa, la transacción pactada por la demandante-compradora y los codemandados vendedores consistía en la compraventa del inmueble en las condiciones o estado en que se encontraba al momento de consumada la compraventa.

4. Como parte de las cláusulas y condiciones convenidas en la Escritura Núm. 68 de Compraventa, la demandante-compradora y los codemandados vendedores expresamente acordaron y estipularon lo siguiente:

   "SEXTO: LA PARTE VENDEDORA por la presente, VENDE, CEDE, TRASPASA Y ENAJENA a favor de LA PARTE COMPRADORA, la propiedad descrita en el hecho PRIMERO de la presente escritura, "as is", es decir, en el estado en que se encuentra la misma, con todos sus usos, derechos reales y personales, cargas, servidumbres y gravámenes y cuanto le sea anexo a la misma con la obligación legal de saneamiento en caso de evicción. LA PARTE COMPRADORA entra en la posesión real y pacífica de la propiedad que adquiere, sin más requisito, que el presente otorgamiento, luego de haberla examinado detenidamente y la acepta en las condiciones en que se encuentra (AS IS CONDITION). Consignando todas las partes que esta escritura contiene todos los pactos de las partes, por lo que toda manifestación oral o escrita con referencia a dicha propiedad, efectuada con anterioridad a este otorgamiento, queda sin valor a efecto alguno y que[,] por tanto, no tiene obligación la PARTE VENDEDORA de realizar reparación o mejora alguna a la misma como condición a la Compraventa."

5. De igual modo, consta de la Escritura Núm. 68 de Compraventa que el notario Cristian Manuel Rivera Rodríguez advirtió a las partes lo siguiente:

   "Los comparecientes aceptan esta escritura en la forma redactada por ser conforme a lo convenido y yo, el Notario, en cumplimiento a lo dispuesto en la ley, después de indagar la voluntad de los otorgantes y examinar e investigar los hechos y datos de los que depende la eficacia y validez del negocio, les hice las reservas y advertencias legales generales pertinentes a este otorgamiento. Entre otras cosas se les explicó y ellos expresamente reconocen ... la necesidad de mensurar el terreno adquirido y verificar si las estructuras que enclavan en el mismo adolecen o no de vicios..."

6. En la Solicitud Uniforme de Préstamo Residencial, la demandante acordó y reconoció que el prestamista y/o sus agentes, corredores de bienes raíces, aseguradores,

recaudadores, sucesores o concesionarios, no realizaron representaciones ni proveyeron garantía alguna a la demandante sobre la propiedad ni sobre las condiciones o el valor de la misma.

7. De esta forma, consta del documento titulado "For Your Protection: Get a Home Inspection", que la Cooperativa orientó a la demandante Lizbeth Roldán Flecha sobre lo siguiente: (i) que si deseaba obtener una inspección de la vivienda, era mejor hacerlo a la brevedad posible; (ii) que la tasación no era una inspección de la vivienda; (iii) que la determinación de procurar o no una inspección de la vivienda sería una decisión voluntaria de la demandante; (iv) que la inspección de la vivienda solo se realizaría si la demandante la procuraba y la coordinaba; (y) que el prestamista puede optar por no inspeccionar la vivienda; y (vi) que ni la FHA ni el prestamista garantizaban las condiciones de la vivienda.

8. El 26 de febrero de 2021, la demandante Lizbeth Roldán Flecha recibió y firmó el documento titulado "For Your Protection: Get a Home Inspection".

9. El 27 de abril de 2021, la demandante Lizbeth Roldán Flecha otorgó la Escritura Pública Núm. 69 de Hipoteca ante el Notario Público Cristian Manuel Rivera Rodríguez.

10. En virtud de dicha escritura, la demandante constituyó una hipoteca sobre el inmueble localizado en la calle 2-J[-2] Las Piedras, de la Urb. April Garden, Las Piedras, Puerto Rico 00771, inscrito como la Finca Núm. 9,285 en la Sección de Humacao del Registro de la Propiedad, para garantizar la deuda evidenciada por el pagaré por la suma principal de $83,535 más intereses.

11. En la Escritura Pública Núm. 69 de Hipoteca, la demandante, como deudora hipotecaria, acordó, convino y aceptó lo siguiente: "[e]l Deudor pagará a su vencimiento el principal y los intereses sobre la deuda evidenciada por el Pagaré, y cargos por demora adeudados bajo el Pagaré. El Deudor también pagará las Partidas en Reserva conforme a la Sección 3."

12. Además, la demandante, como deudora hipotecaria, acordó, convino y aceptó lo siguiente:

> "Los pagos efectuados bajo el Pagaré y bajo esa Hipoteca se harán en moneda de los Estados Unidos. Sin embargo, si cualquier cheque u otro instrumento recibido por el Prestador en pago bajo el Pagaré o esta Hipoteca es desairado y devuelto al Prestador, el Prestador podrá requerir que cualquier o todo pago posterior adeudado bajo el Pagaré y bajo esta Hipoteca se haga de una o más de las siguientes maneras, a elección del Prestador: (a) efectivo, (b) giro, (c) cheque certificado, cheque oficial de una institución financiera o cheque de gerente, siempre y cuando tal cheque sea librado por o contra una institución cuyos depósitos estén asegurados por una agencia, instrumentalidad o entidad federal, o (d) Transferencia Electrónica de Fondos.

13. En la Escritura Pública Núm. 69 consta el propósito por el cual la demandante Roldán Flecha hipotecó la Finca Núm. 9,285.[24]

14. El Tribunal Apelativo emitió Sentencia el 16 de julio de 2024, con el número de caso KLAN202400614, sobre el presente caso.

15. Allí[,] el Tribunal Apelativo determinó lo siguiente:

> [I]a señora Roldán declaró bajo juramento en su toma de deposición que ella tuvo la oportunidad de examinar el inmueble, luego de otorgar el contrato de opción y previo a la compraventa. En su toma de deposición, declaró que el señor Cruz Cruz le entregó las llaves de la casa y ella acudió a la propiedad con su madre. Posteriormente, volvió a la propiedad y tomó medidas. En ambas ocasiones, los señores Cruz Martínez no estuvieron presentes. Adicionalmente, declaró que las escrituras de compraventa le fueron discutidas. Admitió que, cual surge de la escritura de compraventa, había examinado detenidamente la propiedad y la aceptaba en las condiciones en que se encontraba. Además, que sí había firmado el documento sobre la recomendación de una inspección de la propiedad. Por último, y en lo pertinente, aclaró que nunca solicitó a la Cooperativa una inspección de la propiedad.[25]

Como parte del dictamen emitido, el tribunal de instancia concluyó, en síntesis, que, de acuerdo con el alfanumérico KLAN202400614, este Tribunal de Apelaciones determinó que la apelante admitió y consintió mediante la escritura de compraventa que esta había examinado detenidamente la propiedad y la aceptó en las condiciones en que se encontraba. Por lo anterior, dispuso que no existían controversias que impidieran conceder el remedio sumario.

En desacuerdo, el 1 de abril de 2025, compareció la apelante, mediante un recurso de *apelación* y esgrimió la comisión de los siguientes tres (3) errores:

1. Err[ó] el Honorable Tribunal de Primera Instancia al determinar que la Cláusula "AS/IS" exonera a la parte

---

[24] Al revisar los autos del presente caso, específicamente en el Apéndice 9 del recurso a las págs. 192-194, y el Apéndice 12 del recurso a las págs. 216-219, vemos que en la *Resolución* emitida y notificada el 17 de julio de 2024, se incluyeron las primeras trece (13) determinaciones de hechos que surgen de la *Sentencia* en reconsideración. Es decir, por vía de reconsideración, el foro de instancia mantuvo las determinaciones de hechos uno (1) a la trece (13) de la *Resolución* del 17 de julio de 2024 y añadió las determinaciones de hechos catorce (14) a la quince (15).

[25] Apéndice 12 del recurso a las págs. 216-218.

vendedora de responsabilidad de saneamiento por daños ocultos.

2. Err[ó] el Honorable Tribunal de Primera Instancia al determinar que la Cláusula de "AS/IS" es una renuncia a algún derecho que produzca un saneamiento por daños ocultos.

3. Err[ó] el Honorable Tribunal de Primera Instancia al determinar que, la mera examinación de la propiedad de paso a una renuncia inteligente e informada, por parte del comprador, referente a reclamaciones futuras por daños ocultos.

Mediante *Resolución*, emitida el 2 de abril de 2025, concedimos a la apelante hasta el 9 de abril de 2025, para acreditar el cumplimiento con la Regla 13(B) y la Regla 14(B) del Reglamento de este Tribunal de Apelaciones.[26] Además, concedimos a la parte apelada hasta el 30 de abril de 2025, para presentar su alegato en oposición al recurso.

El 7 de abril de 2025, compareció la apelante en cumplimiento con nuestra *Resolución* del 2 de abril de 2025. Subsiguientemente, el 30 de abril de 2025, compareció la parte apelada mediante su alegato en oposición a la apelación. Con el beneficio de la comparecencia de ambas partes, procederemos a exponer el derecho aplicable.

II

**A. Recurso de Apelación**

La Regla 52.2 (a) de Procedimiento Civil, [27] así como la Regla 13(A) del Reglamento del Tribunal de apelaciones,[28] disponen que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días, desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello, quiere decir que no admite justa causa, es improrrogable y que su incumplimiento es insubsanable.[29] Por otra parte, es menester

---

[26] 4 LPRA Ap. XXII-B, R. 13(B) y R. 14(B).
[27] 32 LPRA Ap. V, R. 52.2 (a).
[28] 4 LPRA Ap. XXII-B, R. 13 (A).
[29] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000); *Arriaga v. FSE*, 145 DPR 122, 131 (1998); *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).

acentuar que la correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[30] De manera que, si la sentencia no fue notificada conforme a derecho, el Tribunal de Apelaciones no tendrá jurisdicción para atender la misma, ya que el recurso instado ante este foro será prematuro.[31]

Ahora bien, el término de treinta (30) días para acudir en alzada, antes señalado, puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[32] En tal caso, el término para apelar se contará a partir del archivo en autos de la copia de la notificación de la resolución que resuelve la moción.[33] Esto, a pesar de que la moción se haya declarado sin lugar.

De otra parte, precisa señalar que en grado de apelación, la tarea principal del Tribunal de Apelaciones es examinar como los tribunales inferiores aplican el derecho a los hechos particulares de cada caso, y si abusaron de su discreción.[34] En consecuencia, el foro apelativo no debe pretender administrar ni manejar el trámite regular de los casos ante el foro primario.[35] Así, pues, si las determinaciones del tribunal no están desprovistas de base razonable ni perjudican los derechos de una parte, debe prevalecer el criterio del juez de instancia.[36] Por ello, se ha establecido que los foros apelativos no deben intervenir con las facultades discrecionales del tribunal de instancia, a menos que se demuestre que: (i) actuó con perjuicio o parcialidad; (ii) abusó de su discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier

---

[30] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[31] *Berríos Fernández v. Vázquez Botet*, 196 DPR 245, 250-251 (2016).
[32] Regla 47 de Procedimiento Civil, 32 LPRA Ap. V, R. 47.
[33] *Íd.*
[34] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 707 (2013); *Sierra, Secretario del Trabajo v. Tribunal Superior*, 81 DPR 554, 572 (1958).
[35] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).
[36] *Sierra, Secretario del Trabajo v. Tribunal Superior,* supra, a la pág. 572.

norma procesal o derecho sustantivo. Igualmente, se permite intervenir para evitar un perjuicio sustancial.[37]

### B. Sentencia Sumaria

El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que, únicamente, se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.[38] El propósito de este mecanismo procesal es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo.[39] A esos efectos, "solamente debe ser dictada una sentencia sumaria en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes".[40] Es decir, para que proceda dictar sentencia por la vía sumaria, es imprescindible que, de los documentos que acompañan la solicitud o que obran en el expediente del tribunal, no surja controversia legítima sobre hechos materiales del caso y que, por ende, sólo reste aplicar el derecho.[41] Ahora bien, a los fines de considerar la moción, para que se dicte sentencia sumariamente, se tendrán como ciertos todos los hechos no controvertidos que consten en los documentos y declaraciones juradas ofrecidas por la parte promovente.[42] No obstante, tales documentos deben evaluarse de la forma más favorable para la parte que se opone a la moción.[43]

La Regla 36 de Procedimiento Civil regula todo lo concerniente a las solicitudes de sentencia sumaria.  En específico, la Regla 36.2 de Procedimiento Civil dispone que:

---

[37] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 210 (2023).

[38] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911 (1994).

[39] *García Rivera et al. v. Enríquez*, 153 DPR 323, 337 (2001); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 632 (1994).

[40] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a las págs. 911-912, citando a *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 721 (1986) (Cita depurada); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279 (1990).

[41] *Nissen Holland v. Genthaller*, 172 DPR 503, 511 (2007).

[42] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 DPR 945, 957 (1993).

[43] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, supra, a la pág. 957.

> Una parte contra la cual se haya formulado una reclamación podrá, a partir de la fecha en que fue emplazada pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.[44]

Por otra parte, a Regla 36.3 de Procedimiento Civil requiere que la parte que promueve la solicitud de sentencia sumaria, cumpla con los requisitos de forma siguientes:

> (1) una exposición breve de las alegaciones de las partes;
>
> (2) los asuntos litigiosos o en controversia;
>
> (3) la causa de acción sobre la cual se solicita la sentencia sumaria;
>
> (4) una relación concisa, organizada y con párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, indicando los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
>
> (5) las razones por las cuales se debe dictar sentencia argumentando el derecho aplicable, y
>
> (6) el remedio que debe ser concedido.[45]

De otra parte, en cuanto a la contestación a la Sentencia Sumaria, la Regla 36.3 (b) de Procedimiento Civil dispone que esta deberá ser presentada dentro del término de veinte (20) días, desde su notificación, y deberá contener lo siguiente:

> (1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior;
>
> (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

---

[44] 32 LPRA Ap. V, R. 36.2.
[45] 32 LPRA Ap. V, R. 36.3.

(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.[46]

Cumplidos los requisitos establecidos para la solicitud de sentencia sumaria y su correspondiente oposición, el inciso (e) de la Regla 36.3 de Procedimiento Civil establece que:

La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[47]

No obstante, lo anterior, el solo hecho de no presentar evidencia que controvierta lo presentado por la parte promovente no implica necesariamente que proceda la sentencia sumaria.[48] Sobre este particular, el Tribunal Supremo ha resuelto que las partes no puede descansar en aseveraciones generales, es decir, meras afirmaciones no bastan.[49] A esos efectos, y a tenor con la Regla 36.5 de Procedimiento Civil,[50] estarán obligadas a demostrar que tienen evidencia para sustanciar sus alegaciones.[51] Por tanto, como regla general, para derrotar una solicitud de sentencia sumaria, la parte opositora deberá presentar contradeclaraciones juradas y

---

[46] Regla 36.3 de Procedimiento Civil, *supra.*

[47] Regla 36.3 de Procedimiento Civil, *supra; García Rivera et al. v. Enríquez,* supra, a la pág. 338; *Roldán Flores v. M. Cuebas,* 199 DPR 664, 676 (2018); *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 225 (2015).

[48] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a la pág. 913; *García Rivera et al. v. Enríquez*, supra, a la pág. 338; *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 DPR 538, 549 (1991); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 281 (1990).

[49] *Flores v. Municipio de Caguas*, 114 DPR 521, 525 (1983); *Ramos Pérez v. Univisión*, 178 DPR 200, 215-216 (2010).

[50] 32 LPRA Ap. V, R. 36.5

[51] *Flores v. Municipio de Caguas*, supra, a la pág. 525; *Ramos Pérez v. Univisión*, supra, a la pág. 215-216.

contradocumentos que pongan en controversia los hechos presentados por el promovente.[52]

Por otra parte, es menester subrayar que nuestro Tribunal Supremo ha indicado que el mecanismo de sentencia sumaria no es el apropiado para resolver casos en los cuales hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial.[53] De la misma manera, también ha razonado que "hay litigios y controversias que por la naturaleza de estos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de 'affidavits' o deposiciones".[54]

En cuanto al proceso de revisión de las sentencias sumarias, nuestro Alto Foro ha sido enfático en que el Tribunal de Apelaciones debe:

> (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario;
>
> (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36;
>
> (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y
>
> (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[55]

Ahora bien, la sentencia sumaria no procederá en las instancias que: (i) existan hechos materiales y esenciales controvertidos; (ii) haya alegaciones afirmativas en la demanda que

---

[52] *Ramos Pérez v. Univisión*, supra, a la pág. 215; *Roldán Flores v. M. Cuebas*, supra, a la pág. 677.

[53] *Elías y otros v. Chenet y otros*, 147 DPR 507, 521 (1999); *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994); *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 663 (2017).

[54] *Elías y otros v. Chenet y otros*, supra, a la pág. 521, citando a *García López v. Méndez García*, 88 DPR 363, 380 (1963).

[55] *Roldán Flores v. M. Cuebas, et al.*, supra, a la pág. 679. (Cita depurada); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118-119 (2015).

no han sido refutadas; (iii) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (iv) como cuestión de derecho, no proceda.[56] Además, al revisar la determinación del foro primario, respecto a una sentencia sumaria, estamos limitados de dos (2) maneras. *Primero*, solo podemos considerar los documentos que se presentaron ante el foro de primera instancia. Es decir, "las partes no pueden añadir en apelación exhibits, deposiciones o affidávits que no fueron presentados oportunamente en el foro de primera instancia, ni pueden, por primera vez ante el foro apelativo, esbozar teorías nuevas o esgrimir asuntos nuevos".[57] *Segundo*, solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta.[58] Entiéndase, que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, ya que dicha tarea le corresponde al foro de primera instancia.[59]

### C. Regla 10.2 de Procedimiento Civil

La Regla 10.2 de Procedimiento Civil regula la presentación de defensas y objeciones a una reclamación judicial.[60] La moción de desestimación al amparo de esta regla es una defensa especial que formula el demandado en la cual solicita que se desestime la demanda presentada en su contra, aun sin necesidad de formular una alegación previa.[61] En específico, la regla establece que:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
>
> (1) falta de jurisdicción sobre la materia;
>
> (2) falta de jurisdicción sobre la persona;

---

[56] *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 335-336 (2021).
[57] *Meléndez González et al. v. M. Cuebas, supra,* a la pág. 114. (Cita depurada).
[58] *Íd.*, a la pág. 115.
[59] *Íd.*; *Vera v. Dr. Bravo*, 161 DPR 308, 335 (2004).
[60] 32 LPRA Ap. V, R. 10.2.
[61] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); *Colón v. Lotería,* 167 DPR 625, 649 (2006).

(3) insuficiencia del emplazamiento;

(4) insuficiencia del diligenciamiento del emplazamiento;

**(5) dejar de exponer una reclamación que justifique la concesión de un remedio;**

(6) dejar de acumular una parte indispensable.[62]

Al atender a una moción de desestimación fundamentada en que la reclamación no justifica la concesión de un remedio, el juzgador de instancia deberá tomar por cierto todos los hechos bien alegados en la demanda, y aquellos que hayan sido aseverados de manera clara y concluyente, y que, de su faz, no den margen a dudas.[63] A su vez, deberá interpretar las alegaciones de la demanda conjuntamente, de forma liberal y de la manera más favorable posible a la parte demandante, para determinar si la misma es suficiente para constituir una reclamación válida.[64] Ello, puesto a que, en nuestro ordenamiento jurídico, se ha desarrollado una política pública a favor de que los casos se ventilen en los méritos. A esos efectos, la desestimación únicamente procederá cuando existan circunstancias que permitan a los tribunales determinar, sin ambigüedades, que la demanda carece de todo mérito o que la parte demandante no tiene derecho a obtener algún remedio.[65] Además, nuestro Tribunal Supremo ha sido enfático en que la desestimación no procede si la reclamación es susceptible de ser enmendada.[66]

**D. Vicios Redhibitorios**

Sabido es que la persona que tramite un bien, a título honoroso, responde por los vicios redhibitorios, aunque los desconozca.[67] El Código Civil de 2020 define los vicios redhibitorios

---

[62] Regla 10. 2 de Procedimiento Civil, *supra.*
[63] *González Méndez v. Acción Social et al,* 196 DPR 213, 234 (2016); *Accurate Sols. v. Heritage Enviroment,* 193 DPR 423, 433 (2015); *Colón v. Lotería,* 167 DPR 625, 649 (2006)
[64] *Torres, Torres v. Torres et al.,* 179 DPR 481, 501 (2010); *Pressure Vessels PR v. Empire Gas PR,* 137 DPR 497, 505 (1994).
[65] *González Méndez v. Acción Social et al.,* supra, a la pág. 235.
[66] *Accurate Sols. v. Heritage Enviroment,* supra, a la pág. 433; *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 429 (2008); *Colón v. Lotería,* supra, 649; *Clemente v. Depto. de la Vivienda,* 114 DPR 763, 771 (1993).
[67] Artículo 1261 del Código Civil de Puerto Rico de 2020 (Código Civil de 2020), Ley Núm. 55-2020, 31 LPRA sec. 9851.

como "el defecto oculto en el bien transmitido a título oneroso, existente al tiempo de la adquisición, que hace impropio al bien para su destino o disminuye de tal modo su utilidad que, de haberlo conocido, el adquirente no lo habría adquirido o habría dado menos por él".[68] A esos efectos, solo procederá una acción por vicios redhibitorios cuando: (i) no son conocidos por el adquirente; (ii) son graves y hacen las cosas impropia para el uso a la cual se le destina; (iii) disminuya su uso, de manera que de haberlo conocido el comprador, no habría comprado la cosa o habría ofrecido un menor precio por ella; (iv) sean preexistente a la venta, y (v) se ejercite la acción en el plazo de seis (6) meses, contados desde la entrega de la cosa vendida, o desde la última gestión de inteligencia entre las partes.[69] Por lo anterior, se ha razonado que "[n]o es vicio redhibitorio el que conoce el adquirente al momento de la transmisión o el que pudo haber conocido conforme a sus aptitudes". [70] Sobre este particular, el Código Civil de 2020 estableció que "para juzgar la aptitud de conocer el defecto, debe atenderse el deber que tiene de obrar con prudencia y pleno conocimiento de las circunstancias".[71]

El adquirente del bien que adolece de vicios redhibitorios puede escoger entre: (i) reclamar la subsanación de los defectos; (ii) solicitar la entrega de un bien equivalente, o (iii) resolver total o parcialmente el contrato. Ahora bien, únicamente procederá la resolución total si el defecto recae sobre un aspecto determinante para la adquisición del bien. En cuanto al resarcimiento de los daños sufridos, el adquirente solo tiene derecho al resarcimiento de estos si el transmitente actuó con dolo.[72]

---

[68] Artículo 1267 del Código Civil de 2020, 31 LPRA sec. 9871.
[69] *Íd.*, Artículo 1269, 31 LPRA sec. 9873; *Garcia Reyes v. Cruz Auto Corp.*, 173 DPR 870, 890-891 (2008).
[70] Artículo 1268 del Código Civil de 2020, 31 LPRA sec. 9872.
[71] *Íd.*
[72] *Íd.*, Artículo 1263, 31 LPRA sec. 9853.

En lo pertinente al caso de marras, precisa señalar que no está vedado el que, mediante pacto, se suprima la obligación de saneamiento por los defectos ocultos.[73] Ello, puesto a que, en nuestro ordenamiento jurídico "los derechos que concede la ley pueden renunciarse siempre que no se prohíba su renuncia o que esta no sea contraria a la ley, a la moral ni al orden público, ni en perjuicio de tercero".[74]  No obstante, lo anterior, el pacto mediante el cual se suprimió la responsabilidad de saneamiento de los vicios ocultos será inválido si la parte transmitente conocía de los defectos ocultos o si incurrió en dolo.[75] Por otra parte, si la renuncia al saneamiento se realizó mediante una cláusula general, diseñada y redactada por una de las partes, el contrato debe interpretarse en sentido desfavorable a la persona que las redactó y en favor de la persona que tuvo menor poder de negociación.[76]

Por último, puntualizamos que nuestro Tribunal Supremo ha expresado que la procedencia de una acción redhibitoria es una cuestión de hecho, por lo que solo se justifica la intervención de los tribunales apelativos cuando se demuestre ausencia de prueba adecuada o error manifiesto.[77]

### III

Este Tribunal tiene ante su consideración la revisión de una *Sentencia* mediante la cual el foro de instancia desestimó con perjuicio la causa de acción de la apelante, luego de reconsiderar haber dictado una *Resolución* a través de la cual denegó dictar sentencia sumaria.

En su pliego, la apelante nos solicita que revoquemos la *Sentencia* emitida en reconsideración y ordenemos la continuación

---

[73] Artículo 1262 del Código Civil de 2020, 31 LPRA sec. 9852; *García Reyes v. Cruz Auto Corp.* 173 DPR 870, 890 (2008); *González v. Agostini,* 79 DPR 510, 516 (1956).
[74] Artículo 14 del Código Civil de 2020, 31 LPRA sec. 5333.
[75] Artículo 1262 del Código Civil de 2020, *supra; García Reyes v. Cruz Auto Corp.* supra, a la pág. 890; *González v. Agostini,* supra, a la pág. 516.
[76] Artículo 1247 del Código Civil de 2020, 31 LPRA sec. 9801.
[77] *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 397 (1999).

de los procedimientos. A su vez, plantea que el foro de instancia se equivocó (i) al determinar que la cláusula "AS IS" exoneró a la parte vendedora de su responsabilidad de saneamiento por daños ocultos, así como que constituyó una renuncia a su derecho de exigir el referido saneamiento, y (ii) al determinar que el mero examen de la propiedad objeto de este caso dio paso a una renuncia inteligente e informada, por parte de la apelante, referente a reclamaciones futuras por daños ocultos.

De entrada, puntualizamos que, ante un recurso apelativo en el cual se nos solicita revisar la procedencia de una solicitud de sentencia sumaria, a esta Curia le corresponde revisar *de novo* la referida moción, así como su correspondiente oposición, prestando particular atención a que, ambos escritos cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil y si en realidad existen hechos materiales en controversia.[78]

Tras revisar minuciosamente la solicitud de sentencia sumaria presentada por el Matrimonio Cruz-Martínez, así como la oposición presentada por la señora Roldán Flecha, coincidimos en que ninguno de los escritos cumplió con las exigencias de la Regla 36 de Procedimiento Civil. En específico, la solicitud de sentencia sumaria del Matrimonio Cruz-Martínez falló en exponer los asuntos litigiosos o en controversias y en esgrimir una relación concisa, organizada y con párrafos enumerados de los hechos pertinentes sobre los cuales no había controversia sustancial, indicando los párrafos o las páginas de la prueba admisible en evidencia en las cuales se establecían los mismos.[79] Mientras que, la señora Roldán Flecha, en su oposición, falló en presentar una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que

---

[78] *Roldán Flores v. M. Cuebas, et al.*, *supra,* a la pág. 679; *Meléndez González et al. v. M. Cuebas*, supra, a las págs. 118-119.
[79] Regla 36.3 de Procedimiento Civil, *supra.*

estaban realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de la prueba admisible en evidencia. Aunque la señora Roldán Flecha subrayó los hechos que, a su entender, no estaban controvertidos, no indicó las párrafos o páginas de la prueba admisible en evidencia que establecía estos hechos. Peor aún, como parte de su escrito, no adjuntó ningún documento.

Ahora bien, dado a que la concesión de un dictamen sumario es una cuestión discrecional, se ha reconocido la facultad del tribunal de instancia de que, *si procede*, dicte sentencia sumaria, pese a que la solicitud de la parte promovente y/o su correspondiente oposición no cumplan con los requerimientos de la Regla 36 de Procedimiento Civil.[80] No obstante, lo anterior, es la opinión de esta Curia que esta discreción debe ejercerse con cautela y en limitadas ocasiones. Entiéndase, solo cuando el foro primario tenga ante sí toda la verdad sobre los hechos pertinentes.[81] Ello, puesto a que, conforme expresamos en nuestra previa exposición doctrinal, hay casos en que difícilmente se puede reunir ante sí toda la verdad de los hechos a través de prueba documental.[82] De manera que, la omisión del juicio en su fondo podría tener el efecto de privarle a las partes de las garantías del debido proceso de ley. Particularmente, en el presente caso, adelantamos que la evidencia recopilada, hasta el momento en el cual el foro primario emitió el dictamen que nos ocupa, no era suficiente para disponer del caso de manera sumaria.

---

[80] *SLG Zapata-Rivera v. J.F. Montalvo*, supra, a la pág. 455.

[81] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a las págs. 911-912, citando a *Corp. Presiding Bishop CJC of LDS v. Purcell*, supra, a la pág. 721; *Cuadrado Lugo v. Santiago Rodríguez*, supra, a la pág. 279.

[82] *Elías y otros v. Chenet y otros,* supra, a la pág. 521, citando a *García López v. Méndez García*, supra, a la pág. 380.

Establecido lo anterior, procedemos discutir los errores esgrimidos por la parte apelante, los cuales, por estar íntimamente relacionados, los atenderemos en conjunto.

Según expresamos anteriormente, los errores de la aquí apelante se centran en plantear que el hecho de que en la escritura de compraventa se incluyó una cláusula mediante la cual se aceptó la propiedad adquirida "AS IS", y el hecho de que esta visitó la misma en dos (2) ocasiones, antes de firmar la aludida escritura, no la inhabilitaban de solicitar el saneamiento de los vicios redhibitorios que se hallaban en la referida propiedad. De forma que, no procedía dictar sentencia sumaria, desestimando la causa de acción incoada por ella.

Los antedichos planteamientos fueron en los cuales se fundó la solicitud de sentencia sumaria presentada por el Matrimonio Cruz-Martínez. Entiéndase que, estos insistieron en que la aquí apelante había renunciado al saneamiento de los vicios redhibitorios mediante la firma la escritura de compraventa que contenía la cláusula "AS IS". Además, resaltaron el hecho de que la señora Roldán Flecha fue orientada, mediante dicha escritura, que debía cerciorarse de si la estructura adolecía de vicios, así como que se le entregaron las llaves de la propiedad, en dos (2) ocasiones, para que inspeccionara la propiedad. A su juicio, lo anterior, hacía improcedente la *Demanda* presentada por la aquí apelante.

Evaluada la solicitud de sentencia sumaria presentada por Matrimonio Cruz-Martínez y la correspondiente oposición de la señora Roldán Flecha, el foro primario declaró *No Ha Lugar* la moción de sentencia sumaria, mediante *Resolución* del 17 de julio de 2024. Ello, amparado en que había cuatro (4) controversias de hechos materiales que impedían que se concediera el remedio peticionado. Posteriormente, el foro primario, reconsideró su dictamen inicial, motivado por una moción de reconsideración

presentada por el Matrimonio Cruz-Martínez. Así, pues, el referido foro emitió el dictamen que nos ocupa, a través del cual desestimó la acción incoada por la señora Roldán Flecha, con perjuicio. En específico, puesto a que no se justificaba la concesión de un remedio a favor de la aquí apelante.

Luego de examinar con detenimiento lo planteado y esgrimido en la referida moción de reconsideración, así como los autos ante nuestra consideración, colegimos que el foro primario incidió en su discreción al reconsiderar su dictamen del 17 de julio de 2024 y al dictar sentencia sumaria, a los efectos de desestimar la causa de acción incoada por la apelante, con perjuicio. Esto, dado a que lo único que revela la solicitud de reconsideración presentada por el Matrimonio Cruz-Martínez es que, según la ley de este caso, establecida mediante las determinaciones de hecho esgrimidas en la *Sentencia Parcial* del 10 de noviembre de 2023, y notificada el día 13, del mismo mes y año, era un hecho incontrovertido el que, mediante la Escritura de Compraventa Núm. 68, las partes del título acordaron mediante una cláusula "AS IS" vender, ceder, traspasar y enajenar la propiedad en cuestión en el estado en que se encontraba.[83]

Es norma harta conocida que la doctrina de la ley del caso aplica a las controversias adjudicadas, tanto por los Tribunales de Primera Instancia como por tribunales apelativos.[84] Su propósito es que los tribunales se resistan de rexaminar asuntos ya considerados dentro de un mismo caso, para velar por el trámite ordenado y expedito de los litigios, así como para promover la estabilidad y la certeza del derecho.[85] Ahora bien, pese a que es ley en este caso que

---

[83] Véase Determinación de Hecho Núm. 4 de la *Sentencia Parcial* del 10 de noviembre de 2023, y notificada el día 13, del mismo mes y año, en la Entrada 89 del SUMAC.

[84] *Cacho Pérez v. Hatton Gotay y otros*, 195 DPR 1, 9 (2016).

[85] *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183, 200-201 (2020); *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 608 (2000); *Núñez Borges v. Pauneto Rivera*, 130 DPR 749, 755 (1992).

las partes del título acordaron enajenar la propiedad en las condiciones en las que se encontraba, y que el tribunal estaba impedido de rexaminar este asunto, huelga resaltar que la solicitud de reconsideración incoada por la parte apelada constaba de tres (3) páginas, las cuales, de ninguna manera, remediaron el incumplimiento con los requisitos de la Regla 36 de Procedimiento Civil de su solicitud de sentencia sumaria, ni resolvieron las controversias de hechos materiales establecidas en la *Resolución* del 17 de julio de 2024.

Por otra parte, es menester acentuar, que el mero hecho de que la apelante aceptó la propiedad en las condiciones en que se encontraba, no implica, por sí solo, que esta perdió su derecho a reclamar por vicios redhibitorios.[86] Según reseñamos en nuestra previa exposición doctrinal, aunque no está prohibido el que mediante pacto se suprima la obligación del transmitente del saneamiento de los vicios ocultos, para que el referido pacto sea válido, la parte transmitente tenía que, al momento de pactar, desconocer de los vicios y actuar sin dolo.[87] Por su parte, únicamente se entenderá que es un vicio redhibitorio aquel que desconoce el adquirente al momento de la transmisión o el que, conforme a sus aptitudes, no pudo haberlo conocido.[88] Consecuentemente, para que el foro primario pudiera disponer de este caso y determinar si se justificaba un remedio a favor de la aquí apelante, era necesario conocer si cuando el Matrimonio Cruz-Martínez pactó con la señora Roldán Fecha conocía de los vicios redhibitorios y/o si actuó con dolo. A su vez, era necesario que el referido foro conociera si la señora Roldán Fecha, según sus aptitudes, pudo haber conocido de los vicios ocultos en las dos (2)

---

[86] Artículo 1262 de Código Civil de 2020, *supra*; *García Reyes v. Cruz Auto Corp.* supra, a la pág. 890; *González v. Agostini*, supra, a la pág. 516.
[87] Artículo 1262 del Código Civil de 2020, *supra*; *García Reyes v. Cruz Auto Corp.* supra, a la pág. 890; *González v. Agostini*, supra, a la pág. 516.
[88] Artículo 1268 del Código Civil de 2020, *supra*.

ocasiones en las que visitó la propiedad, antes de firmar la escritura de compraventa.

Es por lo anterior que entendemos que los errores esgrimidos por la apelante se cometieron. Esto, dado que el tribunal de instancia debe resolver parte de las controversias de hechos materiales que estimó que quedaban pendientes, en su *Resolución* del 17 de julio de 2024, para poder disponer de este caso. En específico, estas son:

1. [S]i la señora Flecha tenía conocimiento de los vicios redhibitorios o si estaban a simple vista.

2. [S]i el [Matrimonio Cruz-Martínez] sab[í]a de los vicios redhibitorios de la propiedad.

3. [S]i el [Matrimonio Cruz-Martínez] inform[ó] a la demandante de los vic[i]os redhibitorios para que así la demandante tuviera pleno conocimiento de las circunstancias al momento de adquirir la propiedad en controversia.[89]

Conforme detallamos previamente, cuando un tribunal desestima una causa de acción, basado en que no se justifica la concesión de un remedio, tiene que cerciorarse que existan las circunstancias que permitan al juzgador de hechos concluir, sin ambigüedad, que la demanda carece de todo mérito y/o que la parte demandante no tiene derecho ningún remedio.[90]

Ahora bien, en cuanto a la cuarta (4) controversia de hecho esgrimida por el tribunal de instancia, mediante la cual indicó que restaba por determinar "sobre el momento en que el perito visit[ó] la casa[,] entiéndase[,] si fue antes o después del desprendimiento del techo", luego de evaluar los escritos de las partes, colegimos que no existe controversia de hecho en cuanto a que el perito de la apelante visitó la propiedad luego de que ocurriera el desprendimiento en el techo. Mas aún, cuando en la deposición realizada a la señora Roldán Flecha, está expresa que, en las dos (2) ocasiones en las

---

[89] Apéndice 9 del recurso, a la pág. 194.
[90] *González Méndez v. Acción Social et al.,* supra*,* a la pág. 235.

cuales visitó la propiedad, no fue acompañada por ningún perito.[91] A su vez, en la deposición tomada al perito Carlos J. Mendoza Angulo, este manifestó que, cuando inspeccionó la propiedad por primera vez, "el techo ya estaba desprendido".[92]

Ante todo lo expuesto, concluimos que procede revocar el dictamen ante nuestra consideración.

IV

Por los fundamentos que anteceden, se *revoca* la *Sentencia* apelada, y, así revocada, se reinstala lo dispuesto en la *Resolución* del 17 de julio de 2024, a los fines de establecer que en la acción del título quedan pendientes las controversias de hecho uno (1) a la tres (3), esgrimidas en la antedicha *Resolución*. En consideración a lo anterior, se devuelve el caso para la continuación de los procedimientos en armonía a lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[91] Deposición de la señora Roldán Flecha, a la pág. 89, en las líns. 19-24.
[92] Deposición del perito Carlos J. Mendoza Angulo, a la pág. 111, en las líns. 8-14.